NO. 16-1369

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

PARIS AVERY,

*Plaintiff — Appellant,*

v.

Christine Wilson, *in her individual capacity,*

*Defendant- Appellee,*

and

Angela Marie McCall-Tanner, *in her individual capacity*; Demetra Garvin, *in her individual capacity*; The Estate of Coroner Curt Copeland, *in his individual capacity,*

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

**BRIEF OF PLAINTIFF-APPELLANT,
PARIS AVERY**

Elizabeth A. Franklin-Best
Elizabeth Franklin-Best, P.C.
900 Elmwood Avenue, Ste. 200
Columbia, South Carolina 29201
FED ID #9969
(803) 765-1044
betsy@blumelaw.com

E. Charles Grose, Jr.
404 Main Street
Greenwood, South Carolina 29646
FED ID #6072
(864)538-4466
Charles@groselawfirm.com
*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

Table of Contents .................................................. i

Table of Authorities .............................................. ii

Jurisdictional Statement .......................................... 1

Statement of Issues Presented for Review .......................... 1

Summary of Argument .............................................. 1

Argument ......................................................... 3

Standard of Review ............................................... 3

Statement of Relevant Facts and Argument ......................... 3

Conclusion ....................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bacon v. Wood*, 616 Fed. Appx. 601 (4th Cir. 2015) ............................................. 15

*Durham v. Horner*, 690 F.3d 183 (4th Cir.2012)................................................... 16

*Franks v. Delaware*, 438 U.S. 154 (1978).................................................................. 17

*Lambert v. Williams*, 223 F.3d 257 (4th Cir.2000) ................................................ 15

*Miller v. Prince Georges County*, 475 F.3d 621 (4th Cir. 2007) .......................... 17

*Smith v. Reddy*, 101 F.3fd 351, 355 (4th Cir. 1996)............................................... 17

*Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810 (4th Cir.1995) ............................ 3

*Tolan v. Cotton*, 134 S. Ct. 1861 (2014)................................................................... 15

*United States v. Colkley*, 800 F.2d 297 (4th Cir. 1990) ......................................... 17

*White v. Coleman*, 277 F. Supp.292 (1967)............................................................. 18

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over this matter, a final order of a district court, pursuant to U.S. Code § 1291.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

The district court erred in granting Defendant, Officer Christine Wilson's motion for summary judgment.

## SUMMARY OF ARGUMENT

Paris's young son died after ingesting too much of a doctor-prescribed medication he was taking for his severe eczema while in the custody of a babysitter. Officer Christine Wilson, with the Beaufort County Sheriff's Department investigated the case and sought the arrest warrant for Paris's arrest for homicide by child abuse. Paris spent six years in prison and lost the custody of her other two children before the South Carolina Supreme Court reversed her conviction, finding that the State failed to produced evidence from which a jury could find her guilty. JA 22-27.

Dr. Demetra Garvin, a forensic toxicologist opined, after communications with Officer Wilson preceding her arrest, that she believed Paris killed her son by purposefully giving him too much of the medication

1

so she would not "have to deal with him."  The information received by Garvin from Wilson, however, was materially inaccurate and Garvin testified these facts were important to her theory of the case.  Additionally, Wilson failed to reveal information to Garvin or the magistrate judge that undercut the State's theory of "chemical restraint."  The district court judge granted Officer Wilson's motion for summary judgment, but this Court should reverse.  A jury should be allowed to consider Officer's Wilson's misrepresentations to the forensic toxicologist, the suppression of information that undermined the State's theory of prosecution, and Wilson's generally sloppy and ill-documented criminal investigation in assessing whether Paris has shown that she was maliciously prosecuted by Officer Wilson as detailed below.

## ARGUMENT

The district court judge erred in granting defendant, Officer Christine Wilson's, motion for summary judgment because a number of genuine issues of material fact exist that should be resolved by a jury.

### Standard of Review

In reviewing a grant of summary judgment, this Court applies *de novo* review, the same standard that the district court was required by law to apply for granting the motion for summary judgment. *Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 817 (4th Cir.1995).

### Statement of Relevant Facts and Argument

Paris Avery was a young, single mother working at the Golden Corral in Beaufort, South Carolina to support her three young children when her child, her infant son, died of complications from the ingestion of hydroxyzine. Her son was prescribed the hydroxyzine, also known as "Atarax," by his attending physician to treat a severe case of eczema that made him miserable. On the night of his death, Paris's son was in the care of a babysitter while Paris went back to work to finish up chores so she would not lose her job. When Paris returned to the babysitter's house after

3

midnight, she discovered her child's lifeless body and was inconsolable. JA 22-27.

Officer Wilson was the duty investigator the night Paris's child died and responded to the babysitter's home after being called by the coroner. JA 45-46. She spoke to some people present at the house, but only took one statement, from Angenetta Wright, the babysitter. However, statements made by others, which were not contemporaneously documented by Officer Wilson, and were vague, became the kernel of a prosecution theory that, from the beginning, unquestioningly focused on Paris as a criminal suspect. Officer Wilson sought an arrest warrant for Paris for homicide by child abuse on the theory that Paris used her son's doctor prescribed medication on this particular night so that she would not have to care for him.

Dr. Demetra ("Demi") Garvin, a forensic toxicologist from the Richland County Sheriff's Office in Columbia, SC assisted Officer Wilson with her death investigation into the child's death. Relying on statements made by Officer Wilson, Dr. Garvin provisionally concluded in an email dated September 16, 2008 that Paris used the hydroxyzine to "chemically restrain" her child. JA 30.

4

Officer Wilson never spoke to Paris regarding what happened to her son beyond some general remarks made on the night that her child died and while Paris was overcome with grief. Though eight months passed as Officer Wilson "investigated" her criminal case against Paris, she never bothered to interview Paris. Two hundred- fifty days after her child died, Officer Wilson sought a warrant for her arrest that stated:

> That on or about August 19, 2006, the defendant Paris Genici Avery, did, at 3115 Clydesdale Circle, County of Beaufort, Beaufort, SC, commit the offense of Homicide by Child Abuse. The defendant did commit an act causing the death of her child under circumstances manifesting an extreme indifference to human life. The **defendant did knowingly administer to her son, Child, 17-months-old, an excessive amount of his prescribed eczema medication, hydroxyzine hcl**. The markedly elevated dose or doses resulted in his death, the cause of which was reported by the pathologist as acute hydroxyzine intoxication. **Affiant and others are witnesses to prove the charge** (emphasis added).

JA 29.

The magistrate signed this warrant on April 24, 2007 and Paris was arrested shortly thereafter. She voluntarily returned from Maryland where she had been living to surrender herself to Officer Wilson.

Statements alleged by Officer Wilson in the affidavit were materially misleading and false, and she is liable for her role in the unconstitutional prosecution of Paris.

Officer Wilson was the lead (and only) investigator in the death of Paris's young son. Officer Wilson testified at her deposition that she did not recall the content of any conversation with Dr. Garvin (because she did not take notes), JA 49, but Dr. Garvin testified at her deposition that her trial testimony, indicating at least two conversations occurred between the two, was accurate. Officer Wilson testified that she only recalls one conversation with Garvin. JA 49-50. Officer Wilson's investigative notes are spotty, and fail to indicate dates on which important events may (or may not) have occurred. JA 52-58.[1]

Subsequent to discussing the case with Officer Wilson, Dr. Garvin rendered the opinion that she believed the child's death was a case of "chemical restraint." Per an email sent from Dr. Garvin to Officer Wilson

---

[1]    For example, Officer Wilson could not recount when she received the final autopsy report. JA 143. She said she made "a couple of attempts" to meet with Solicitor Stone about the case but never documented when those occurred. When she did meet with Solicitor Stone, she could not recall with any specificity what was discussed. JA 144-45. She did not document when she spoke with Paris when Paris was living in Maryland. JA 147.

and others on September 19, 2006, Dr. Garvin asked Officer Wilson if she wanted any additional assistance in questioning Paris so as to solidify her provisional theory.   JA 30.  Officer Wilson declined her offer, even though Officer Wilson had limited knowledge in the subject area.  JA 174.  Officer Wilson testified at her deposition that ". . . doses, half doses and half teaspoons and tablespoons" were "way outside [her] realm of understanding."  Officer Wilson testified that she has no recollection of what she told Garvin about the case.   JA 172-74.    According to Dr. Garvin's deposition testimony, Officer Wilson failed to disclose that child was prescribed other medications, in addition to hydroxyzine, a fact into which Dr. Garvin specifically inquired.  Dr. Garvin testified this was information she believed was relevant in determining whether this was a case of "accident." JA 80- 87.

There is no indication that Dr. Garvin and Officer Wilson communicated beyond this email exchange on September 19, 2006 even though Officer Wilson came into possession of exculpating information that she failed to communicate to Dr. Garvin; specifically her second interview with Angenetta Wright on September 28, 2006 and the letter she received from Rotondo Young, the child's biological father.

and others on September 19, 2006, Dr. Garvin asked Officer Wilson if she wanted any additional assistance in questioning Paris so as to solidify her provisional theory.   JA 30.  Officer Wilson declined her offer, even though Officer Wilson had limited knowledge in the subject area.  JA 174.  Officer Wilson testified at her deposition that ". . . doses, half doses and half teaspoons and tablespoons" were "way outside [her] realm of understanding."  Officer Wilson testified that she has no recollection of what she told Garvin about the case.  JA 172-74.   According to Dr. Garvin's deposition testimony, Officer Wilson failed to disclose that child was prescribed other medications, in addition to hydroxyzine, a fact into which Dr. Garvin specifically inquired.  Dr. Garvin testified this was information she believed was relevant in determining whether this was a case of "accident." JA 80- 87.

There is no indication that Dr. Garvin and Officer Wilson communicated beyond this email exchange on September 19, 2006 even though Officer Wilson came into possession of exculpating information that she failed to communicate to Dr. Garvin; specifically her second interview with Angenetta Wright on September 28, 2006 and the letter she received from Rotondo Young, the child's biological father.

7

receipt of the letter is that it occurred prior to Paris's arrest since the letter references Paris's non-incarceration as a point of concern to the author.

Officer Wilson's failure to disclose this information to Dr. Garvin or the magistrate is evidence tending to show malicious prosecution.  Both Wright's statement and Young's letter pointed to the possibility of accidental ingestion of the hydroxyzine, or some other non-intentional error, but Officer Wilson simply did not disclose it.  Instead, she informed the magistrate that Paris "knowingly administered" too much of the drug with reckless disregard for her child's life on the night he died.  Dr. Garvin testified that Young's letter would have been relevant to her findings about the case.  JA 77.

Officer Wilson testified to her understanding of Dr. Garvin's provisional "chemical restraint" theory:

> " . . .I had an understanding of [chemical restraint] based on conversations that I had had with other people that had seen Paris Avery use Dimetapp, NyQuil, Benadryl, other substances like that to—to calm the kids down so that she wouldn't have to deal with them.[2]"

---

[2]    The only evidence of Wilson's understanding of Paris's purported use of the doctor prescribed medication to chemically sedate her child, aside from her deposition testimony, is contained in her investigative notes: "George and Sharon Williams both also stated they have seen Paris in the past giving medication unnecessarily to the boys when they are not sick,

JA 172.

It does not follow from Officer Wilson's understanding that Paris gave her child too much of his doctor prescribed medication on this particular night because she "did not want to deal with him." Indeed, that theory was patently illogical. First, the child had an excruciatingly bad case of eczema that Paris was treating him for.

But also, drowsiness is a normal side-effect of hydroxyzine. Paris would not have needed to have her child ingest more than the therapeutic amount to have the child sedated, if that were her intention. It is completely normal for a child taking a therapeutic amount of an antihistamine to be drowsy.

Additionally, the "chemical restraint" theory was illogical because Paris had a babysitter scheduled for this night. There was never any dispute

---

such as Nyquil and Benadryl for purpose of quieting them so she does not "have to deal with them." At trial the State attempted to introduce testimony by Peggy Young (Rotondo's mother) and Sharon Williams but the judge excluded it. Peggy Young testified during the State's proffer that she never observed Paris giving medication to child. JA 103. Williams only stated that she saw Paris give medication to his child because he was crying due to his eczema. JA 115. George Williams never gave a statement nor did he testify.

that Paris was supposed to work that night, and had lined up Ms. Wright to babysit her child while she rolled silverware. This was far from a case where a caregiver overmedicates a child so he or she can go "party" with friends. Paris had a babysitter lined up; there was no need, under the State's theory of chemical restraint, for Paris to want to sedate her child. There never was any empirical basis upon which to conclude that this was anything other than a tragic mistake or accident, Officer Wilson pursued an aggressive criminal prosecution nonetheless.

In short, the State pursued an illogical prosecution theory, and Officer Wilson completely ignored and suppressed evidence that would have undermined it. Then, she falsely told the magistrate that she had witnesses to prove that Paris "knowingly administered" too much of the medication to her child. In fact, the information she obtained from her witnesses supported a theory of accidental overdose.

In addition to the above facts, a review of Officer Wilson's wholly substandard and incomplete investigation supports the conclusion that this case should be resolved by a jury.

For example, Dr. Garvin testified she _explicitly_ asked about the dosing implement used by Paris to administer the drug to her child and was told

11

that Paris used the implement that accompanied the medicine. That was not true. JA 70, 72-75. Dr. Garvin testified she needed to know about the implement in formulating her theory. Garvin JA 78. And see JA 88- 94.

Officer Wilson also <u>explicitly</u> told Dr. Garvin that Paris understood the directions for use of the medication, JA 79, but the record shows that Paris was not the person who initially received the medicine from the pharmacist, and there was no evidence that anyone communicated to Paris about the use of the medicine.

Dr. Garvin asked, and Officer Wilson told Dr. Garvin, that there had not been any spillage of the medicine bottle. However, Officer Wilson had allowed someone completely unrelated to law enforcement to secure the medicine bottle containing the hydroxyzine from Paris's house. Wilson JA 63-65. All Officer Wilson knew of this person is that she stated she worked in a pharmacy. Officer Wilson failed to find out where she worked, or what her job even was. JA 65. But most importantly, Officer Wilson never asked Paris if any of the medicine had been spilled. Apparently, at some point there had been some spillage, either out of this bottle or after the first prescription was filled. JA 94, 99.

Officer Wilson never communicated to Dr. Garvin that the child was taking medications other than the hydroxyzine, even though Dr. Garvin also <u>specifically</u> asked for that information. JA 83- 85. Pharmacy records note that the child was also being prescribed prednisolone, Zyrtec, and triamcinolone ointment. JA 43.

Officer Wilson met with the magistrate on August 24, 2007. She has no recollection of the content of any conversation she had with him, assuming she did have any conversation with him at all. She did not recall. JA 67. If she did speak to him, she thinks she would have "probably" told him "just the background of the case. Probably the background of the case, the—the—I would imagine that the toxicology, the autopsy and all those sorts of things would have been discussed." JA 68. She clearly did not tell the magistrate about Mr. Young's letter since she did not show that letter to anyone. And there is no evidence at all that she informed the magistrate that Ms. Wright told her, Officer Wilson, that Paris was adamant that she gave her child the proper amount of medication the night he died.

The district court judge's order notes her investigation provided her with facts tending to support probable cause, JA 167-68, but fails to consider that a number of the facts are highly disputed or are innocuous. For instance,

the neighbor's seeing the child in a "deeper sleep than usual" would simply be the result of the child taking his medication, not that Paris had intentionally given the child more than what she believed the therapeutic amount to be. Additionally, the "other persons" who stated that Paris had given the child medications to sedate them in the past never claimed to have seen that happen on this night. Also, Paris disputes that she told Wilson that she personally administered the drug at 3:00pm on the day he died. Also, Paris disputes the daycare worker's claim that she was not provided any of the child's medication. JA 100.

But additionally, there are a number of remaining disputes of material fact, and the district court judge disregarded Dr. Garvin's deposition testimony that she explicitly asked Officer Wilson a number of questions regarding the events surrounding the child's death, and that Officer Wilson gave her materially inaccurate information. Dr. Garvin testified that that information relating to other medications the child was prescribed by the doctor, and the use of the dosing implement were relevant to determining the manner of the child's death. JA 69-70. She also testified that Mr. Young's letter would have been relevant to her findings about the case. JA 77. A jury should also assess the relevance of Officer Wilson's failing to disclose Ms.

14

Wright's second interview, or Mr. Young's insistence that Paris gave the child the correct amount of the medication as revealed in the letter he sent her. As is clear from Paris's deposition, she used kitchen spoons to administer the drug to her child, and even at the time of her deposition, did not realize the difference between a teaspoon and a tablespoon. Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law, and, in making that determination, a court must view the evidence in the light most favorable to the opposing party. *Tolan v. Cotton*, 134 S. Ct. 1861 (2014). See also *Bacon v. Wood*, 616 Fed. Appx. 601 (4th Cir. 2015). The district court judge's order should be reversed because it fails to acknowledge the numerous disputes of material fact that are present in this case.

A "malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." *Lambert v. Williams*, 223 F.3d 257, 261 (4th Cir.2000). To state such a claim, a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process

unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor. See *Durham v. Horner*, 690 F.3d 183, 188 (4th Cir.2012).

Officer Wilson lacked probable cause when she secured the arrest warrant from the magistrate. At the time she sought the warrant, she knew that Paris's child had died with a higher than therapeutic level of hydroxyzine in his system and that it was likely a fatal dose. She also had some indication from others that Paris may have given the children medication on prior occasions when these other people did not believe it was warranted. She did not have a single witness prepared to testify that Paris "knowingly administered" an "excessive" amount of hydroxyzine to her child on the night that her child died. She also had two pieces of evidence—Ms. Wright's statement and the Mr. Young's letter—that militated against the "chemical restraint" theory. Officer Wilson, according to Dr. Garvin, failed to give her critical pieces of information that would have impacted Dr. Garvin's view of the case. Officer Wilson is also the person who testified before the Grand Jury and secured the indictment. There is only one conclusion that can be drawn from the facts developed during discovery— that Officer Wilson did not have probable cause to seek the arrest warrant and that she provided false information to the magistrate and additionally

did not reveal exculpatory information that was in her possession to the magistrate. See *Miller v. Prince Georges County*, 475 F.3d 621 (4th Cir. 2007) ("Plaintiff Miller alleges here that his seizure was unreasonable because it followed from a warrant affidavit that was deficient because it was dishonest"); and see *Smith v. Reddy*, 101 F.3fd 351, 355 (4th Cir. 1996) (Qualified immunity is lost only if "the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable . . . In other words, an officer is not denied qualified immunity for making a mistake, as long as that mistake is reasonable under the circumstances") (internal citations omitted). Taking all of this evidence in the light most favorable to Paris, a reasonable jury could conclude that the affidavit submitted by Officer Wilson contained misrepresentations and omissions made deliberately or with reckless disregard for "whether they thereby made [] the affidavit misleading." *United States v. Colkley*, 800 F.2d 297, 300 (4th Cir. 1990). See also *Franks v. Delaware*, 438 U.S. 154 (1978).

Seeking a grand jury indictment does not defeat Paris's malicious prosecution claim because there is no reason to believe that Officer Wilson gave the Grand Jury any additional information that she did not give to either the magistrate or the solicitor. Indeed, she cannot recall what

17

information she gave to the magistrate, the solicitor, or Dr. Garvin. In South Carolina state court, the grand jury process is completely secret and nothing is even transcribed. There is no way to find out what Officer Wilson informed them. Under South Carolina state law, the prima facie finding of probable cause upon an indictment is rebuttable. *White v. Coleman*, 277 F. Supp.292 (1967).

Conviction at trial does not sanitize the malicious prosecution claim either since the jury was not informed that Officer Wilson misrepresented material facts to Dr. Garvin about the facts that would have impacted her assessment of whether the child's death was an accident—it was not until discovery was undertaken in this civil suit that it became clear that Dr. Garvin specifically asked about other medications the child was receiving, the implement used to administer the drug, and possible spillage, and that Officer Wilson did not provide truthful answers to her.

A jury should be the ultimate arbiters of Paris's claim against the investigator who was responsible for her being prosecuted for homicide by child abuse. Respectfully, she asks this Court to reverse the district court's grant of summary judgement to Officer Wilson and remand her case for trial.

## CONCLUSION

For the preceding reasons, Plaintiff-Appellant, Paris Avery, respectfully asks this Court to reverse the district court's grant of summary judgment to Defendant, and remand this case for trial.

Respectfully submitted,

Elizabeth A. Franklin-Best
Elizabeth Franklin-Best, P.C.
900 Elmwood Avenue, Ste. 200
Columbia, South Carolina 29201
FED ID #9969
(803) 765-1044
betsy@blumelaw.com

E. Charles Grose, Jr.
404 Main Street
Greenwood, South Carolina 29646
FED ID #
(864)538-4466
Charles@groselawfirm.com
*Counsel for Plaintiff-Appellant*

BY: /s/ Elizabeth A. Franklin-Best

NO. 16-1369

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

PARIS AVERY,

*Plaintiff — Appellant,*

v.

Christine Wilson, *in her individual capacity,*

*Defendant- Appellee,*

and

Angela Marie McCall-Tanner, *in her individual capacity*; Demetra Garvin, *in her individual capacity*; The Estate of Coroner Curt Copeland, i*n his individual capacity,*

*Defendants.*

## CERTIFICATE OF SERVICE

I hereby certify that I have served opposing counsel, Ms. Mary Lohr, via ECF on this date, June 6, 2016 with a copy of same to be placed in the mail on this date.

/s/ Elizabeth A. Franklin-Best
Elizabeth Franklin-Best, P.C.
900 Elmwood Avenue, Ste. 200
Columbia, South Carolina 29201
FED ID #9969
(803) 765-1044
betsy@blumelaw.com